<u>NOT FOR PUBLICATION</u>                [Docket Nos. 38, 59, 62, 64]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

---

|  |  |
|---|---|
| NORMAN L. SCOTT, | : |
| Plaintiff, | : |
| | : Civil No. 08-4810 (RMB/AMD) |
| v. | : |
| | : |
| BRIAN L. CALPIN, | : **OPINION** |
| Defendant. | : |

---

Appearances:

Norman L. Scott
1601 South Ithan Street
Philadelphia, PA 19143
    *Pro se* Plaintiff

Brian L. Calpin
52 N. Broad Street
Woodbury, NJ 08096
    *Pro se* Defendant

**BUMB**, United States District Judge:

Plaintiff Norman L. Scott ("Plaintiff") asserts claims of legal malpractice against Defendant Brian L. Calpin ("Defendant"), arising out of Defendant's representation of Plaintiff in Plaintiff's divorce proceeding. Defendant has moved for summary judgment. For the reasons that follow, Defendant's motion is GRANTED.

I.   <u>Background</u>[1]

_____

[1]   The facts recited herein are drawn from Plaintiff's opposition to Defendant's motion for summary judgment, which Plaintiff "certified," Defendant's certifications in support of summary judgment, and affidavits by Plaintiff and Defendant regarding an alleged conflict of interest.

With the exception of Plaintiff's affidavit regarding the alleged conflict of interest, Plaintiff has not submitted documents that this Court may credit on a summary judgment motion, such as a verified complaint, an affidavit, or an unsworn declaration under penalty of perjury. <u>Toscano v. Warren Cnty. Dep't of Human Servs.</u>, 323 F. App'x 120, 121 (3d Cir. 2009)("A plaintiff opposing a motion for summary judgment may not rest on the mere allegations of his complaint; instead, he or she must proffer ' 'specific facts' by affidavit or other evidence."); <u>Ziegler v. Eby</u>, 77 F. App'x 117, 120 (3d Cir. 2003)(holding that a verified complaint may qualify as an affidavit); 28 U.S.C. § 1746 (allowing unsworn declarations made under penalty of perjury to qualify as an affidavit).  Thus, Plaintiff's allegations are set out here largely to provide clarity to Plaintiff's claims in this action.

Defendant's certifications are also problematic because they were not made "under penalty of perjury."  Instead, they read: "I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are knowingly false, I am subject to punishment."  While there is authority to suggest that such a statement is insufficient to satisfy 28 U.S.C. § 1746 (<u>Bond v. Taylor</u>, No. 07-6128, 2009 WL 2634627, at *2 (D.N.J. Aug. 24, 2009)), this "Court is satisfied that this language effectuates the intent and purpose contemplated by 28 U.S.C. § 1746" such that it is "substantially" in the form proposed by the statute, as required.  <u>Reed Elevier, Inc. v. Inherent.com, Inc.</u>, No. 05-4048, 2006 WL 3827414, at *6 n.5 (D.N.J. Dec. 27, 2006); 28 U.S.C. § 1746.

In any event, the Court's treatment of the parties' certifications may be academic.  Even if the Court credited Plaintiff's allegations and discredited Defendant's opposition, summary judgment would <u>still</u> be appropriate, as discussed in more detail below, because of Plaintiff's failure to submit an appropriate expert report establishing the relevant standard of care and Defendant's deviation from it.

A.  <u>The State Action</u>

On May 31, 2007, days before Plaintiff was to proceed with a divorce trial, Defendant agreed to represent Plaintiff in Plaintiff's divorce. [Docket No. 38, Certification of Defendant in Support of Motion for Summary Judgment ¶ 10].

Prior to Defendant's retention, Plaintiff had represented himself, including through New Jersey's Matrimonial Early Settlement Program ("MESP"). <u>Id.</u> ¶ 3; [Docket No. 39, Response in Opposition to Motion for Summary Judgment ¶ 13]. According to Plaintiff, the MESP Panel recommended, among other things, that Plaintiff and his ex-wife's home "was subject to equitable distribution in the amount of $100,000." [Docket No. 1, Compl. ¶ 3A].

On August 22, 2006, over Plaintiff's objection, the court in the divorce proceeding (the "Divorce Court") directed the sale of the home and ordered that 15% of the net proceeds be held in escrow to protect any claim by Plaintiff for equitable distribution of the home. [Docket No. 38, Ex. B]. The Divorce Court noted, however, that the 15% figure was "not meant to be a cap or a floor for what the Plaintiff may be entitled to in equitable distribution." <u>Id.</u> The Divorce Court further provided that its order was "not meant to determine that the Plaintiff has an interest in the property but rather if he does his interest is protected." <u>Id.</u>

3

Plaintiff moved for reconsideration of the Divorce Court's order. [Docket No. 38 ¶ 8]. On September 19, 2006, the Divorce Court issued a second order, denying Plaintiff's motion for reconsideration and affirming the terms of the first order. [Docket No. 38, Ex. C]. The court further indicated that the home was being sold solely in Plaintiff's ex-wife's name. Id. ("There is no basis to stay the sale of the house solely in the [Plaintiff's ex-wife's] name."). According to Defendant, the Divorce Court's ruling was based on a finding by the court that (1) the home was purchased prior to the parties' marriage in Plaintiff's ex-wife's name; (2) the home was immune from equitable distribution, and (3) the 15% figure was based on compensating Plaintiff for purported home improvements he made. [Docket No. 38 ¶ 9].

Nearly a year later, but not long after Defendant had begun representing Plaintiff, on June 7, 2007, just as the matter was to proceed to trial, the parties reached a settlement, which was placed on the record. Id. ¶¶ 10-11. The parties agreed to a number of terms, only one of which is material here: of the net proceeds of the sale of the home held in escrow, which totaled approximately $10,500, Plaintiff would retain $8,500. Id. ¶ 11.

B.  This Action

Plaintiff filed his Complaint in this Court in September 2008, approximately one year after the settlement. Plaintiff's

4

Complaint contains various counts but does not specifically denominate Plaintiff's theories of relief.  See generally Compl. While the Complaint clearly alleges legal malpractice, it also vaguely alleges, without elaboration, that the "Defendant [attorney] was negligent, careless, fraudulent misrepresentation, fraudulent concealment, breach of fiduciary duty, and unskillfully handled plaintiffs suit." Compl. ¶ 3. The Complaint alleges legal malpractice in four respects: (1) Plaintiff has not received any monies from the settlement because Defendant failed to properly prepare the judgment; (2) Defendant did not consult with a real estate attorney before allowing the settlement agreement to be put on the record; (3) Defendant should have obtained a better settlement or proceeded to trial; and (4) Defendant was negligent in that he permitted the record to be entered in a haphazard and scattered fashion. Compl. First Count ¶¶ 3D, 3E, Second Count ¶ 2, Third Count ¶ 2, Fourth Count ¶ 2, Fifth Count ¶ 2.

On June 2, 2009 Plaintiff requested an enlargement of time to file an affidavit of merit, as required in a legal malpractice action under New Jersey state law. N.J. Stat. Ann. § 2A:53A-27. [Docket No. 16].  The Court granted that request.  [Docket No. 19].  Plaintiff subsequently submitted an affidavit of merit by Bruce P. Friedman, Esq., an attorney licensed to practice law in the state of Pennsylvania but not New Jersey. [Docket No. 20,

Affidavit of Bruce P. Friemdan].  The affidavit indicates that Friedman "reviewed extensive materials related" to the case, but provides little detail as to the materials he reviewed, and it provides no detail as to how they support Plaintiff's claims. Friedman Affidavit ¶¶ 3, 4 (indicating that the specific documents Friedman reviewed include "Seller's Residency Certification/Exemption, Final Judgment of Divorce, including child support and visitation Order").  According to Friedman, the documents he reviewed indicate "that the marital residence should have been deemed marital property subject to equitable distribution." Id. ¶ 3.  Friedman also claims to have reviewed documents that indicate that Plaintiff's ex-wife received $91,500 from the sale of the home and Plaintiff received $8,500.[2] Id. ¶ 3.  Additionally, he asserts that he reviewed documents that suggest Plaintiff suffered financial losses as a result of Defendant's representation, including the loss of his business. Id. ¶ 3.

Friedman avers that: (1) he does not believe that Defendant advised Plaintiff of all of the factors the court assesses in determining an equitable distribution; (2) he believes Defendant failed to obtain a pension evaluation for Plaintiff's ex-wife and

---

[2]     The Court notes that that finding is contrary to Plaintiff's allegation that he did not receive the money owed to him under the settlement.

that this failure was not "appropriate legal representation"; and (3) he believes that Defendant failed to provide representation within the appropriate standard of care, "in light of the facts that Mrs. Scott was the income superior spouse, had advanced college degrees and was more likely to be able to provide for herself after a divorce." Id. ¶¶ 3, 4, 5.   Aside from this affidavit of merit, Plaintiff has not submitted any expert report from an attorney in support of his claims.  Pursuant to a May 17, 2010 scheduling order, the Honorable Ann Marie Donio had ordered that any expert report be disclosed by June 30, 2010 and any expert depositions conducted by August 27, 2010.  [Docket No. 35, Scheduling Order ¶ 2].  In addition to the absence of an expert's report, no expert depositions were ever taken within the deadline ordered by Judge Donio.

Defendant later moved for summary judgment on September 27, 2010, three days before the deadline for filing dispositive motions.  [Docket Nos. 35, 38].  Plaintiff did not file a dispositive motion but filed a brief in opposition to Defendant's motion.  In opposition, Plaintiff claims Defendant committed malpractice in a number of respects:

> (1)  the MESP Panel Settlement Recommendation demonstrates that Plaintiff "would have received a more equitable settlement had he proceeded without [Defendant] as counsel," [Docket No. 39, ¶ 24];

> (2)  Defendant coerced Plaintiff into settling based on threats of jail because of his child support arrears

(Id. ¶¶ 3-4);

(3)   Defendant failed to specify when Plaintiff would receive the funds to which he was entitled under the settlement, causing Mr. Scott to suffer damages (Id. ¶ 6);

(4)   Plaintiff never executed the Final Judgment of Divorce with Stipulation of Settlement and instructed Defendant to reject the settlement (Id. ¶¶ 6, 12));

(5)   Defendant's working relationship with Plaintiff's ex-wife's attorney, John A. Misci, Esq., was a conflict of interest (Id. ¶ 16);

(6)   Defendant failed to conduct discovery about the marital assets (Id. ¶ 21);

(7)   Defendant failed to submit his billable hours for the work he performed for Plaintiff (Id. ¶ 22);

(8)   Defendant failed to consult with a real estate attorney before allowing the settlement to be placed on the record (Compl. First Count ¶ #3E);

(9)   Defendant is "guilty of malpractice in that he permitted [the divorce] settlement to be entered onto the record in a haphazard, scattered fashion such that it seriously compromised the rights of his client..." (Compl. Fifth Count ¶ 2] and

(10)  Plaintiff is being pursued for a vehicle lease obligation for his ex-wife's car. [Docket No. 54, ¶ 7].

The Court heard oral argument on Defendant's motion on March 23, 2011. At oral argument, the Court honed in on Plaintiff's allegation that Defendant had a conflict of interest.  The Court noted that this was "a very serious allegation" and questioned where the evidence was to support the allegation. Although Plaintiff had failed to submit any evidence in opposition to the summary judgment motion, the Court, recognizing the seriousness

8

of the claim, afforded Plaintiff an opportunity to submit an affidavit detailing the alleged conflict of interest.  Plaintiff subsequently submitted an affidavit asserting a conflict of interest, and Defendant submitted an affidavit in response. [Docket Nos. 47, 48].  The Court also ordered the parties to conduct supplemental briefing on whether Plaintiff's claims were barred by Puder v. Buechel, 874 A.2d 534 (N.J. 2005).  Because the Court concluded that Puder might obviate the need to address the merits of the case, it administratively terminated Defendant's pending summary judgment motion pending a determination of the applicability of Puder.  [Docket No. 43]. As the Court noted, a strict application of Puder would have resulted in a bar of the malpractice action because of the extensive colloquy performed by the Divorce Court before it approved the marital settlement.  Defendant then moved for summary judgment based on Puder.  [Docket No. 45].

The Court heard oral argument for a second time on May 10, 2011.  During the hearing, the Court noted that Plaintiff's affidavit in support of his conflict of interest claim did not provide support for his conflict of interest claim and reminded Plaintiff that it was his obligation to support his allegations with evidence.  At the hearing, Plaintiff also alluded to claims based on a discrepancy between the settlement entered into on June 7, 2007 and the final judgment of divorce dated June 13,

9

2007.  The Court directed Plaintiff to produce a written submission supporting this claim.  [Docket No. 50].  At the end of the hearing, the Court admonished the Plaintiff that "when these type of allegations are made, [it] expects them to be supported by evidence . . . [that it] would not allow fishing expeditions in this courtroom and thus far . . . [Plaintiff had] come up short." Despite the Court's warning, Plaintiff failed to make any submission in support of this claim.

While Defendant's Puder-based summary judgment motion was fully briefed and pending, the New Jersey Supreme Court heard oral argument on November 7, 2011, in Gere v. Louis, 383 A3d 591 (N.J. 2012), on the continued force of Puder.  [Docket No. 55]. The Court then administratively dismissed Defendant's motion for summary judgment based on Puder and administratively terminated this matter, pending resolution of Gere v. Louis.  [Docket Nos. 55, 58]. Defendant was ordered to file any renewed Puder-based summary judgment motion within 30 days of the New Jersey Supreme Court's decision.  [Docket No. 58].  Gere v. Louis was decided on March 6, 2012.  Defendant failed to file a renewed summary judgment motion within 30 days of the decision, instead filing his motion on April 11, 2012, and this Court ordered that any Puder based arguments were waived absent a showing of excusable neglect.  [Docket Nos. 62, 63].  Defendant subsequently moved for leave for permission to file his summary judgment motion out of

time.  [Docket No. 64].

The Court heard oral argument for a third time on May 10, 2012.[3]  At that time, the Court advised the parties that, even if it allowed Defendant to file his summary judgment motion out of time, it was uncertain as to whether Puder was viable in light of the New Jersey Supreme Court's decision in Gere.  It further indicated that it would reopen Defendant's original motion for summary judgment, in fairness to the fact that the Court had only administratively terminated that motion based on the potential applicability, now in doubt, of Puder.  It then queried the parties as to whether they wished to submit any new papers or would rest on their previously filed papers.  Both parties advised that they would rest on their already filed papers.[4]

II.  Standard

---

[3]     Plaintiff also moved for the Court to recuse itself based on an alleged bias against the Plaintiff. [Docket No. 59]. The Court heard argument during the May 10, 2012 hearing on this motion.  At the hearing, the Court found that Plaintiff's allegations of bias were unfounded, particularly given the Court's record of providing Plaintiff repeated opportunities to support his claims with evidence.  Accordingly, for the reasons set forth on the record on that day, Plaintiff's motion for recusal [Docket No. 59] is DENIED.

[4]  As indicated to the parties, this Court is uncertain as to the continued vitality of Puder in light of Gere.  Because, as discussed below, this Court concludes that summary judgment is appropriate regardless of Puder, this Court does not address whether Puder also bars Plaintiff's claims.  Defendant's motion for summary judgment [Docket No. 62] and motion for leave to file that motion out of time [Docket No. 64] are therefore dismissed as moot.

Summary judgment should only be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial . . . burden can be met simply by demonstrating to the district court that there is an absence of evidence to support the non-moving party's case." Queen v. U.S. Sec. Assocs., No. 09-1770, 2010 WL 547525, at *2 (E.D. Pa. Feb. 9, 2010)(internal quotation and citation omitted).

Once this initial burden is met, the party opposing a motion for summary judgment may not stand on his pleadings alone, but must instead cite to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only) or other materials in support of their claim. Id; Fed. R. Civ. P. 56(c).

III. Analysis

12

As discussed above, Plaintiff's Complaint is vague as to the theories alleged and there is also a disconnect between the claims presented by Plaintiff in the Complaint and those made in his opposition to summary judgment.  Therefore, the Court first addresses the nature and scope of Plaintiff's claims and then considers whether those claims can survive summary judgment.

A.   <u>The Nature And Scope Of Plaintiff's Claims</u>

While this Court must liberally construe the *pro se* Plaintiff's Complaint, legal malpractice is the only theory of relief plausibly supported by the facts alleged in the Complaint. <u>Jones v. Oklahoma</u>, 30 F.3d 142, 142 (10th Cir. 1994)("Although we construe a pro se litigant's complaint liberally, we have recognized that a pro se plaintiff is responsible for sufficient factual allegations to alert the court to a recognized legal claim.").

To the extent Plaintiff asserts allegations of malpractice that were not pled in his Complaint, they are not before the Court on this motion for summary judgment.  <u>Bell v. City of Philadelphia</u>, 275 F. App'x 157, 160 (3d Cir. 2008)("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.")(internal quotations omitted).[5]

_____

[5]   In any event, even if Plaintiff's new allegations were properly pled in the Complaint and this Court construed the

13

B.   <u>Plaintiff's Properly Pled Claims</u>

Plaintiff's properly pled claims must be dismissed for two reasons: (1) Plaintiff failed to submit competent evidence of malpractice with respect to these claims; and (2) even crediting Plaintiff's allegations as proper evidence, Plaintiff failed to establish the proper standard of care, or how Defendant deviated from it, through an expert report, as required.

In a legal malpractice case under New Jersey law, the plaintiff bears the burden of demonstrating, by a preponderance

_____

Complaint as asserting theories in addition to legal malpractice, Plaintiff has presented no competent evidence sufficient to withstand Defendant's motion for summary judgment on <u>any</u> legal theory.  It was Plaintiff's burden, as the party bearing the burden of proof at trial, and opposing summary judgment, to submit competent evidence to support his claims.  <u>Player v. Motiva Enters., LLC</u>, 240 F. App'x 513, 522 n.4 (3d Cir. 2007)(holding that, where a party moving for summary judgment points out to the district court that there is an absence of evidence to support the nonmoving party's case, and the party opposing summary judgment bears the burden of proof, it is the nonmoving party's burden to identify evidence of record that creates a genuine issue of material fact).  Plaintiff failed to do so despite numerous opportunities.

As discussed above, Plaintiff has failed to present competent, indeed, any, evidence, aside from the conflict of interest affidavit, that would support any theory of relief. And Plaintiff's conflict of interest affidavit: (1) does not offer facts suggestive of any conflict of interest beyond Plaintiff's own conclusory assertions; (2) is contradicted by Defendant's own affidavit regarding the alleged conflict, which demonstrates that, in fact, there was no conflict at the time of his representation of Plaintiff; and (3) concerns attorney conflict of interest issues, a non-obvious legal matter requiring an expert report (<u>Waterloov Gutter Prot. Sys. Co. v. Absolute Gutter Protection, LLC</u>, 64 F. Supp. 2d 398, 425-28 (D.N.J. 1999)), which, as discussed below, Plaintiff has failed to provide.

14

of the evidence, "(1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) that the attorney breached the duty owed; (3) that the breach was the proximate cause of any damages sustained; and (4) that actual damages were incurred." Pollen v. Comer, No. 05-1656, 2007 WL 1876489, at *7 (D.N.J. June 28, 2007)(citation omitted).

Because Plaintiff bears the burden of establishing malpractice, and Defendant has moved for summary judgment, it was Plaintiff's burden to demonstrate the existence of material facts in dispute through appropriate evidence. Queen, 2010 WL 547525, at *2. As discussed above, Plaintiff has failed, despite ample opportunity to, and extensions afforded by the Court, to submit any affidavit or other competent evidence, with the exception of the affidavit on the alleged conflict of interest, which was not even alleged in the Complaint. The Court twice sua sponte invited Plaintiff to offer proof for certain of his claims. Resolution of this matter has been extended several times, giving Plaintiff additional opportunity since Defendant's summary judgment brief was filed to address the deficiencies in his proof. Plaintiff was even expressly afforded the chance to supplement his papers as recently as May 10, 2012 and instead chose to rest on his papers. And there is no evidence in Defendant's submissions of what Defendant's duty under the circumstances was, how it was breached, or that Plaintiff

15

suffered actual damages for which Defendant's conduct was the proximate cause. Because Plaintiff has failed to demonstrate any evidence of these elements of a malpractice claim, there are no material issues of fact to resolve and summary judgment is appropriate.

Even crediting the factual allegations in Plaintiff's Complaint and submissions as having been properly made in an affidavit, Plaintiff's properly pled claims must still be dismissed. Under New Jersey law, in all but the most obvious of malpractice claims, a plaintiff opposing summary judgment must submit an expert report or face dismissal. Optica, Inc. v. Metro Pub. Adjustments, Inc., No. 03-5065, 2005 WL 1719134, at *17 (D.N.J. July 21, 2005)(dismissing professional negligence claim on summary judgment where no expert testimony was proffered); Waterloov, 64 F. Supp. at 425-28 (holding that a "failure to provide legally sufficient expert testimony" was "fatal" to a legal malpractice claim on summary judgment); Hakeem v. Salaam, 260 F. App'x 432, 434 (3d Cir. 2008)(applying same principle to find that summary judgment was warranted, under Pennsylvania law, based on plaintiff's failure to provide an expert report in support of a non-obvious professional negligence claim); Schmidt v. Currie, 217 F. App'x 153, 156-157 (3d Cir. 2007)(affirming general requirement of expert testimony in legal malpractice cases under Pennsylvania law); Gans v. Mundy, 762 F.2d 338, 343

16

(3d Cir. 1985)(cert. denied 474 U.S. 1010)(holding that the plaintiff in a legal malpractice case had failed to establish the existence of a factual dispute on summary judgment where plaintiff failed to submit expert evidence demonstrating deviation from the relevant standard of care); Sharpe v. Robbins, No. 07-1897, 2009 WL 1811708, at *3-4 (D.N.J. June 23, 2009)(granting summary judgment in legal malpractice case where expert report was inadmissible); Chandler Grp., L.L.C. v. Lanfrit & Tullio, L.L.C., No. L-0432-10, 2012 WL 1912280, at *3 (N.J. Super. Ct. App. Div. May 29, 2012)(recognizing need for expert report in legal malpractice case).

This is not a case where the malpractice alleged is so obvious as to obviate the need for an expert report. Plaintiff's claims, as made out in the Complaint, relate to: (1) Defendant's allegedly faulty preparation of the judgment; (2) a responsibility to consult with another legal professional; (3) the complex calculus of whether a settlement offer was appropriate, whether a better offer was obtainable, or whether to go to trial; and (4) how to properly enter the settlement into the record during the divorce proceeding. These are all claims that require expert opinion of the relevant standard of care and how it was breached.

Plaintiff's second claim warrants special attention as Plaintiff has focused most of his case on this claim. That claim

is centered on Defendant's apparent advice that Plaintiff would not be able to obtain equitable distribution of the proceeds of the home he shared with his ex-wife and its role in his decision to settle.  But that aspect of Defendant's advice cannot be neatly separated from the larger, more complicated question of the best strategy for Plaintiff to pursue at the time.  And even that advice, by itself would require expert opinion as to the law on the area, the applicability of the law to the facts of the case, what options were available procedurally[6], what Defendant's duty was under the circumstances, and how Defendant deviated from that duty. Because Plaintiff's malpractice claims were non-obvious, Plaintiff was required to submit an expert report in response to Defendant's motion for summary judgment.

While Plaintiff did not submit any document formally denominated as an expert report, Plaintiff did submit an affidavit of merit early on in this litigation.  An affidavit of merit does not automatically satisfy the expert report requirement or preclude summary judgment. Argenziano v. Yaccarino, No. L-8090-06, 2008 WL 1721547, at *3 (N.J. Super Ct.

---

[6]     For example, Defendant contends that a final decision had already been made by the judge on this issue, which would mean that the choices for Plaintiff at the time were to settle, proceed to trial with no chance of obtaining the greater equitable distribution Plaintiff believes was warranted, or appeal.

App. Div. April. 15, 2008)("Although plaintiffs produced an affidavit of merit, they did not provide an expert report or request an adjournment of the summary judgment motion to permit them to secure one.  Thus, they did not have evidence to establish that the attorney breached a duty of care."; Rab v. Doner, No. L-9913-07, 2010 WL 2869528, at *4 (N.J. Sup. Ct. App. Div. July 19, 2010)("However, the fact that the affidavits meet the affidavit of merit statute requirements does not mean that plaintiff is insulated from a motion for summary judgment."); Tarutis v. Ackerman, No. L-3603-052008 WL 1987600, at *2 (N.J. Sup. Ct. App.Div. May 9, 2008)(noting that trial court had concluded that affidavit of merit did not qualify as expert report).

Nonetheless, this does not preclude the possibility that an affidavit of merit could satisfy the expert report requirement. In this case, it does not.  The affidavit of merit here contains no information as to the factual bases for any of its conclusions.  See generally Friedman Affidavit. This is fatal. Sharpe, 2009 WL 1811708, at *4 ("An expert's opinion, however, must be supported by the factual evidence and not based solely on the expert's conclusions."); Marvel v. Del. Cnty., No. 07-5054, 2009 WL 1544928, at *17 (E.D. Pa. June 2, 2009)(aff'd 397 F. App'x 785 (3d Cir. 2010)("An expert report that merely offers conclusory opinions, without explicit factual foundation, is

insufficient to defeat a motion for summary judgment.")(quotation and citation omitted); Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 311 (2d Cir. 2008)("An expert's opinions that are without factual basis and are based on speculation or conjecture are similarly inappropriate material for consideration on a motion for summary judgment."); Zeller v. J.C. Penney Co., No. 05-2546, 2008 WL 906350, at *7 n.13 (D.N.J. Mar. 31, 2008)(noting that "an expert's bare conclusions are not admissible under" the Federal Rules of Evidence); Edison Wetlands Ass'n, Inc. v. Akzo Nobel Chems., Inc., No. 08-419, 2009 WL 5206280, at *2 (D.N.J. Dec. 22, 2009)(holding that "the expert must have good grounds for his or her belief" and that courts "need not admit bare conclusions or mere assumptions proffered under the guise of expert opinions")(quotations and citations omitted); Hurd v. Yaeger, No. 3:06cv1927, 2009 WL 2516874, at *4 (M.D. Pa. Aug. 13, 2009)(holding that "an expert's testimony must be accompanied by a sufficient factual foundation before it can be submitted to the jury")(quotation omitted).

Even if treated as an "expert report," the affidavit of merit does not contain any opinion regarding the standard of care applicable to the alleged breaches and how Defendant deviated from that standard. This too warrants dismissal. Maresca v. Mancall, 135 F. App'x 529, 530-31 (3d Cir. 2005)(cert. denied 549 U.S. 816)(where expert's opinion did not establish breach of a

20

standard of care, judgment as a matter of law was warranted); <u>Ali v. Platinum Appraisal Servs., Inc.</u>, No. L-1011-05, 2006 WL 1133554, at *1 (N.J. Sup. Ct. App. Div. May 1, 2006)(affirming dismissal of professional negligence claim, just prior to jury selection, where plaintiff failed to provide a proper expert report setting out the applicable standard of care and how defendant deviated from it); <u>McGrath v. Yosry</u>, 2008 WL 552997, at *7 (N.J.App.Div. March 3, 2008)(affirming grant of summary judgment where in medical malpractice claim where expert report failed to state how each defendant deviated from a specified standard of care).

The affidavit of merit contains opinions that Defendant failed to advise the Plaintiff of all of the factors in an equitable distribution (Friedman Aff. ¶ 3), failed to obtain a pension evaluation of Plaintiff's ex-wife (<u>Id.</u> ¶ 4), and failed generally to provide appropriate representation in light of Plaintiff's ex-wife's higher earnings and higher earning potential (<u>Id.</u> ¶ 5). Notably, none of these purported deficiencies are referenced in the Complaint. <u>See generally</u> Compl. While the affidavit of merit indicates that its drafter reviewed "documents indicating that the marital residence should have been deemed marital property subject to equitable distribution", it does <u>not</u> indicate that Defendant's advice was deficient on this subject. Friedman Aff. ¶ 3. Therefore, even if

21

credited as an expert report, the affidavit of merit does not establish the relevant standard of care, and deviations from that standard, required to survive summary judgment.

III. Conclusion

      For all the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

                          s/Renée Marie Bumb
                          RENÉE MARIE BUMB
                          UNITED STATES DISTRICT JUDGE

Dated:  July 24, 2012